19-86-cr (L)
*United States v. Alison Gu, et al.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2020

(Argued: May 4, 2021               Decided: August 5, 2021)

Docket Nos. 19-86-cr (L), 19-136-cr (con)


_____


UNITED STATES OF AMERICA,
                              *Appellee*,


                    v.


ALISON GU, AKA ALISON LING, AKA ALLY KOO, AKA AI J. CHEN, AKA
JING SHAO, AKA YIJING GU, AKA YIJING LIN, AKA ALISON YI GU, AKA AI
JEN CHEN, and MATTHEW ABEL,
                              *Defendants-Appellants*.


_____


Before: POOLER, RAGGI, and CARNEY, *Circuit Judges*.

        Appeal from the judgment of the United States District Court for the

District of Vermont (Reiss, *J.*) convicting Alison Gu, after a jury trial, of three

counts: (1) bank fraud, in violation of 18 U.S.C. §§ 1344(1) & 2; (2) making false

statements in support of a passport application, in violation of 18 U.S.C. § 1542;

and (3) aggravated identity theft, in violation of 18 U.S.C § 1028A(a)(1). Gu argues that the district court erred by failing to grant her motion for an acquittal based on her failure to complete the passport application paperwork and swear an oath affirming to its veracity. We agree with the district court that submitting a fraudulent passport application, even when unsigned and without swearing the required oath, satisfies the elements of 18 U.S.C. § 1542. Accordingly, we AFFIRM the judgment of the district court.

_____

JESSE M. SIEGEL, New York, N.Y., *for Defendant-Appellant Alison Gu.*

RANDOLPH Z. VOLKELL, Merrick, N.Y., *for Defendant-Appellant Matthew Abel.*

MICHAEL P. DRESCHER, Assistant United States Attorney (Gregory L. Waples, Assistant United States Attorney, *on the brief*), *for* Jonathan A. Ophardt, Acting United States Attorney for the District of Vermont, Burlington, VT, *for Appellee.*

POOLER, *Circuit Judge*:

Defendant-Appellant Alison Gu seeks to vacate her conviction and sentence for two of the three counts of her conviction. At trial, Gu was convicted of three counts: (1) bank fraud, in violation of 18 U.S.C. §§ 1344(1) & 2; (2)

2

making false statements in support of a passport application, in violation of 18 U.S.C. § 1542; and (3) aggravated identity theft, in violation of 18 U.S.C § 1028A(a)(1). On appeal, Gu seeks to reverse her convictions as to Counts 2 and 3. Before the district court, Gu argued that her withdrawal of her passport application and failure to sign and swear the required oath to finalize the application, meant that as a matter of law, she could not be convicted of passport fraud and, therefore, of aggravated identity theft.[1] The district court rejected this argument, holding that the jury could conclude Gu submitted a falsified application with the intent to obtain a passport and that her subsequent withdrawal of the application did not abrogate Gu's criminal liability for that submission.

We agree. Gu's argument that an oath and signature on the passport application form are required to establish criminal liability is not supported by the statute and regulations defining a passport application. The statute and regulations define a passport application as the submitted application form and supporting documents. Submission occurs when a person provides a federal

---

[1] A person is guilty of aggravated identity theft if "during and in relation to" certain enumerated felonies, including passport fraud, she "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person." 18 U.S.C § 1028A(a)(1),(c)(7).

3

official with an application form and any supporting materials for review. Gu acknowledged submission of a falsified application form to a passport officer. Therefore, we affirm the judgment of the district court.

**BACKGROUND**

On July 19, 2016, a grand jury in Burlington, Vermont, charged Gu and Matthew Abel with a scheme to defraud several banks by obtaining mortgages for certain real properties in multiple states using several false identities. Gu was also charged with making a false statement in an application for a United States passport and with aggravated identity theft, based on her use of the identity of another in the commission of the passport offense. On October 17, 2017, Abel pled guilty to the bank fraud offense and was subsequently sentenced to six months of imprisonment followed by five years of supervised release.[2] Gu proceeded to trial.

At trial, the government called two witnesses to testify regarding the charge of making false statements in support of passport application. Passport

---

[2] Here, Randolph Z. Volkell, counsel to Abel, moves to be relieved pursuant to *Anders v. California*, 386 U.S. 738 (1967). The government also moves for summary affirmance of Abel's conviction and sentence. Upon due consideration, counsel's *Anders* motion is granted, and the motion for summary affirmance is granted with respect to Abel's conviction, special conditions of supervised release, and special assessment, as they present no nonfrivolous issues. We dismiss nostra sponte Abel's appeal of his term of imprisonment as this term has concluded.

4

Specialist Manuel Pacheco testified that, on March 27, 2015, he was on duty at the St. Albans, Vermont United States Passport Agency station. Pacheco's role was to adjudicate passport applications, which included reviewing applications for evidence of citizenship and making decisions about expediting passports. The St. Albans office serves individuals seeking passports on expedited bases, largely for imminent international travel.

Pacheco testified as to the required process for applying for a passport at the passport agency. The applicant must provide a passport application form ("DS-11") completed in all respects except for the applicant's attesting signature. With the form, the applicant must submit a passport photo, certified copies of evidence of citizenship, and a primary form of identification. A DS-11 form is entitled "APPLICATION FOR A U.S. PASSPORT." Suppl. App'x at 134. The application form contains a portion that specifically notes that an individual should "STOP" there and "NOT SIGN [THE] APPLICATION UNTIL REQUESTED TO DO SO BY AN AUTHORIZED AGENT." Suppl. App'x at 134. Pacheco testified that passport specialists, upon concluding that an application satisfies the requirements for a passport, administer an oath to the applicant,

5

which is printed in full on the application form, and direct the applicant to sign the application.

On March 27, 2015, Gu arrived at the St. Albans, Vermont office and provided Pacheco a DS-11 form that, consistent with the form's own instructions, was complete up to the point where applicants are instructed to stop; thus, the application remained unsigned. The application falsely provided Gu's name as Ally Lynn Koo and provided a false social security number ending in 5683. Gu concedes that the name and social security number were not hers.

In support of her application, Gu provided an identification card from Johnson State College, a temporary New Hampshire driver's license, and a social security card, all in the name of Ally Lynn Koo. She also provided a Texas birth certification for Thi Thanh Thuy Tran, along with a May 2014 amendment changing Tran's name to Ally Lynn Koo under the authority of a court order from an Alabama probate court. As part of her expedited application, Gu provided a falsified JetBlue itinerary, showing that she planned to travel to Jamaica in April 2015. Pacheco conducted an interview where he asked Gu questions about her request for a passport. This interview led Pacheco to ask further questions about the submission.

Due to the unusual nature of the submission, Pacheco asked Gu to fill out a supplemental form ("DS-5520"), entitled "SUPPLEMENTAL QUESTIONNAIRE TO DETERMINE IDENTITY FOR A U.S. PASSPORT." Suppl. App'x at 140. Pacheco testified that he wanted to verify Gu's statements based on her answers to this questionnaire. Gu filled out this form, in which she falsely stated that she was Ally Lynn Koo, her birth date was October 20, 1982, her social security number ended in 6783, falsely named her parents, and provided a false high school. Gu signed this form. The form noted that the signature was under penalty of perjury.

When she provided the form to Pacheco, Gu told him that she wanted to abandon the application and return to New Hampshire and apply there, as she had more identification documents in New Hampshire. Pacheco made copies of the materials submitted by Gu and then returned them to her. Gu asked for and received a new passport application form. She left the office without swearing the oath or signing the withdrawn application form. Pacheco testified that the entire interaction lasted about an hour.

After Gu left, Pacheco suspected fraud and looked up the birth name on the Texas birth certificate provided by Gu. From an internet search, he

7

discovered the individual named on the certificate was deceased. He provided the documents to his superiors to investigate. Scott Rogers, a Diplomatic Security Service investigator, received the case from the director of the passport agency station in St. Albans. Rogers testified that he reviewed Gu's submitted documents, interviewed Pacheco, and examined the video of the interaction between Gu and Pacheco, all of which were entered into evidence at trial. Based on Rogers's investigation, the government concluded that Gu had manufactured the Ally Lynn Koo identity and falsified a number of identity documents.

Gu testified in her own defense. She denied that she was in the passport office on the day in question. At the conclusion of evidence, Gu moved for an acquittal on Counts 2 and 3, *see* Fed. R. Crim. P. 29(a), arguing that the evidence was insufficient as a matter of law to support guilty verdicts on those counts because a withdrawn DS-11 was not a "passport application" under the relevant federal passport fraud statute. The district court denied the motion, finding nothing in the statute required the passport application form to be completed for the charged crime to occur. The jury returned a guilty verdict on all counts on November 7, 2017.

After the verdict, Gu again moved for an acquittal or new trial on Counts 2 and 3 under Rules 29 and 33 of the Federal Rules of Criminal Procedure. Gu argued that "the application was initially submitted but then clearly and permanently withdrawn," and this prevented criminal liability from attaching to her conduct. Suppl. App'x at 116. Gu also argued that, as she had never signed or sworn to the DS-11 form, it could not be considered a passport application. In a written order denying Gu's motion, the district court found that Gu submitted a passport application, and a withdrawal did not eliminate criminal liability. *See United States v. Gu*, No. 16-cr-84, 2018 WL 671227, at *4–5 (D. Vt. Feb. 1, 2018).

On December 27, 2018, the district court sentenced Gu to concurrent twelve month terms of imprisonment on Counts 1 and 2, followed by a mandatory, consecutive twenty-four month term of imprisonment on Count 3, and a total of three years of supervised release. With respect to the Count 1 bank fraud, the district court also ordered restitution in the amount of $107,117.55 to the Bank of Bennington, and a forfeiture money judgment of $109,104.00. Judgment was entered on December 28, 2018. Gu filed a timely notice of appeal on January 8, 2019.

9

**DISCUSSION**

We review de novo a district court's denial of a motion for judgment of acquittal. *See United States v. Greer*, 631 F.3d 608, 613 (2d Cir. 2011). Where, as here, an acquittal motion is based on the purported insufficiency of the evidence, we apply the same standard for sufficiency as the district court. *See United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003). A defendant challenging the sufficiency of the evidence supporting her conviction "bears a heavy burden, as the standard of review is exceedingly deferential" to the jury's verdict. *United States v. Brock*, 789 F.3d 60, 63 (2d Cir. 2015) (internal quotation marks omitted). Although this Court "review[s] challenges to the sufficiency of evidence *de novo*," when conducting that review, we "will sustain the jury's verdict if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Pierce*, 785 F.3d 832, 837–38 (2d Cir. 2015) (internal quotation marks omitted). Here, Gu's challenge is largely based on a question of statutory interpretation, and "[w]e review questions of statutory interpretation *de novo*." *United States v. Epskamp*, 832 F.3d 154, 160 (2d Cir. 2016) (internal quotation marks omitted); *see also United States v. Al Kassar*, 660 F.3d 108, 125 (2d Cir. 2011).

"We begin, as always, with the language of the statute." *Duncan v. Walker*, 533 U.S. 167, 172 (2001); *see Epskamp*, 832 F.3d at 162. The criminal statute prohibiting passport fraud provides the following:

> Whoever willfully and knowingly makes any false statement in an application for passport with intent to induce or secure the issuance of a passport under the authority of the United States, either for his own use or the use of another, contrary to the laws regulating the issuance of passports or the rules prescribed pursuant to such laws; . . .
>
> Shall be fined under this title, imprisoned not more than … 10 years (in the case of the first or second such offense, if the offense was not committed to facilitate such an act of international terrorism or a drug trafficking crime), or 15 years (in the case of any other offense), … or both.

18 U.S.C. § 1542.

The core of the parties' dispute is the meaning of "an application for passport" as used in § 1542. In construing the phrase, we consider it in context. Specifically, § 1542 sits within a broader statutory scheme governing the issuance and validity of U.S. passports, and that context provides insight as to the meaning of § 1542's text. *See Epskamp*, 832 F.3d at 162 ("A particular statute's plain meaning can best be understood by looking to the statutory scheme as a whole and placing the particular provision within the context of that statute."

11

(internal quotation marks omitted)).

The process for obtaining a passport is provided at 22 U.S.C § 213: "Before a passport is issued to any person by or under authority of the United States such person shall subscribe to and submit a written application which shall contain a true recital of each and every matter of fact which may be required by law or by any rules authorized by law to be stated as a prerequisite to the issuance of any such passport." The statute requires an additional procedure for first time applicants: "If the applicant has not previously been issued a United States passport, the application shall be duly verified by his oath before a person authorized and empowered by the Secretary of State to administer oaths." *Id*. Separate regulation require the collection of a fee for the filing of each application for a passport. 22 C.F.R. §§ 51.21; 51.56

Derivative federal regulations flesh out the statutory context. Notably, 22 C.F.R. § 51.1 defines a passport application as "the application form for a United States passport, as prescribed by the [State] Department pursuant to 22 U.S.C. [§] 213 and all documents, photographs, and statements submitted with the form or thereafter in support of the application." 22 C.F.R. § 51.1. Additionally, 22 C.F.R. § 51.5(b) requires that "[a] passport authorizing officer will examine the passport

12

application and all documents, photographs and statements submitted in support of the application," and 22 C.F.R. § 51.20(b) states that "[a]ll information and evidence submitted in connection with an application is considered part of the application" and that "providing false information as part of a passport application, whether contemporaneously with the form or at any other time, is subject to prosecution under applicable Federal criminal statutes." The regulations also require first time applicants to appear in person before a passport agent, to "verify the application by oath or affirmation", and to "sign the completed application." 22 C.F.R § 51.21(a).

Gu does not contest that she knowingly and willfully made false statements in her passport application form, that she submitted that form to Pacheco, or that she intended thereby to obtain a passport. Gu argues that the statutes and regulations defining a passport application demonstrate that the application must be sworn to and signed before criminal liability attaches under Section 1542. Gu points to the criminal statute's incorporation of the laws and rules regulating the issuance of passports and notes that the statute states that the application must be verified, and the regulations require the oath and signature to execute the application. Because Gu never signed, swore, or paid the

required fees, she argues that she never executed the application. Gu argues that the government's contrary interpretation would render the oath and signature requirements of 22 U.S.C. § 213 and 22 C.F.R § 51.21(a) superfluous, as the crime would have occurred prior to the oath or signature.

The government responds that the regulations define a passport application as the passport application form and "all documents, photographs, and statements submitted with the form." 22 C.F.R § 51.1. Further, the government notes that what the applicant must "sign" is "the completed application," 22 C.F.R § 51.21, indicating that "an application" as referenced in 18 U.S.C. § 1542 can exist prior to signature and oath. Accordingly, Gu's crime was complete when she submitted her passport application form and supporting materials for Pacheco's review.[3] To require an oath and signature before

---

[3] In its briefing, the government appeared to argue that the crime of passport fraud is completed as soon as an individual lies on the application form with the requisite intent to obtain a passport, citing to the First Circuit's language in *United States v. Salinas* that Section 1542 "creates a classic point-in-time offense: at the moment that an applicant makes a false statement with the intent to procure a passport, the crime is complete." 373 F.3d 161, 168 (1st Cir. 2004). When questioned on this point at oral argument with a hypothetical individual, who lied on the application form with the requisite intent to obtain a passport, but never submitted the application form and kept it in a desk drawer, the government suggested that the statute would cover this conduct and referenced our language in *United States v. George*, 386 F.3d 383, 389 (2d Cir. 2004).

We doubt that the statute extends to cover conduct prior to the submission of an application form and note that the language in *George* came in the context of a submitted application, but, because the evidence here established Gu's submission of the relevant materials to Pacheco, we need not decide whether this non-submission scenario would survive a sufficiency challenge.

recognizing a submitted form DS-11 as "an application for passport," 18 U.S.C. § 1542, would graft additional requirements onto the statute, which this court has refused to do in other contexts.

We define the term "application for passport" in this criminal statute, and hold Gu submitted a passport application when she provided a U.S. passport official her fully filled out, but unsigned, DS-11 form, spent an hour in the passport office seeking to obtain a passport, and filled out a supplemental form. Accordingly, there is sufficient evidence for the jury to find Gu violated Section 1542.

A straightforward reading makes clear that Gu's conduct violates the statute. The statute criminalizes false statements "in an application for passport" with intent to secure issuance of a U.S. passport. 18 U.S.C. § 1542. While Section 1542 does not itself define "an application for passport," the broader statutory and regulatory scheme governing the passport process makes clear that such an application exists when the standard application form DS-11 and any supporting materials are submitted to a passport official for review. Despite Gu's contrary argument, the broader statutory structure at issue indicates that an oath and signature are not prerequisites for passport application.

15

First, the regulations define "passport application" as "the application form for a United States passport, as prescribed by the Department pursuant to 22 U.S.C. [§] 213 and all documents, photographs, and statements submitted with the form or thereafter in support of the application." 22 C.F.R. § 51.1. Notably, this definition explicitly does not require that the application form be signed under oath before it can be considered a "passport application."

Second, 22 C.F.R. § 51.5(b) requires an applicant to provide a passport official with a "passport application" and any supporting materials for examination. This indicates that the application exists when submitted for review, which is before signature and oath. This conclusion is only reinforced by 22 C.F.R. § 51.20(b), which requires the applicant to "truthfully answer all questions" in the review process—that is, all questions on the form submitted for review—and states that false information on this "passport application" is punishable under federal law. 22 C.F.R. § 51.20(b).

Third, only after questioning the applicant and "examin[ing] the passport application," 22 C.F.R. § 51.5(b), does a passport official administer an oath and instruct the applicant to "sign the completed application," 22 C.F.R. § 51.21. The language of this regulation indicates that a passport application exists for

16

purposes of Section 1542 when submitted for review, although it is "completed" when the official directs that it be signed under oath.

Gu points to the statutory language regarding the issuance of passports, 22 U.S.C. § 213, in arguing that an oath and signature are required for a passport application. However, this statute states that a passport may be issued to the applicant only after the applicant has "subscribe[d] to and submit[ted] a [truthful] written application" that is "verified by his oath." 22 U.S.C. § 213. This describes requirements for issuing a passport; it does not state what constitutes a passport application.

In sum, the language of the statutory and regulatory scheme detailing the passport application process makes clear that a "passport application" exists prior to an applicant signing the application form under oath. Indeed, the relevant regulations indicate that, once the applicant submits the passport form and supporting materials to the passport official for his review, the applicant has submitted "an application for passport." Therefore, the application element of § 1542 is satisfied, and liability may attach when an applicant submits for official review a DS-11 containing false statements. Gu did so here.

In any event, as the district court found, Gu conceded below that she

17

submitted the application when she provided a completed but unsigned DS-11 form to Pacheco and attempted to pursue her application over the next hour. In her argument below, Gu stated, "the application was initially submitted but then clearly and permanently withdrawn," which, she maintained, prevented criminal liability from attaching to her conduct. Suppl. App'x at 116. We agree with the district court that Gu submitted the application form and supporting documents with the requisite intent.

The statute offers no indication that a withdrawal removes criminal liability for a false application that has been submitted. Gu argues that finding she committed a crime would render the oath requirement superfluous, and this cannot be the purpose or intent of the passport fraud statute. Gu argues that the statute is intended to prevent passport fraud. Until they have taken the oath, applicants may be unaware of the gravity of their conduct and finding in her favor would emphasize the importance of the oath. Gu concludes that allowing applicants an opportunity to abandon their efforts to submit false documents before taking the oath would do more to reduce passport fraud than prosecuting individuals who never had a real chance at obtaining a passport.

We need not here assess the policy-merits of this argument because the language of the statute does not accord with this interpretation. "[I]t is not, and cannot be, our practice to restrict the unqualified language of a statute to the particular evil that Congress was trying to remedy—even assuming that it is possible to identify that evil from something other than the text of the statute itself." *Brogan v. United States*, 522 U.S. 398, 403 (1998). For the reasons already discussed, the language of the statute, construed in context, clearly defines an "application for passport" as the submitted application form.

As we find the statutory language unambiguous, we also reject Gu's invocation of the rule of lenity. This rule "requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them." *United States v. Scott*, 990 F.3d 94, 120 (2d Cir. 2021) (*en banc*) (quoting *United States v. Santos*, 553 U.S. 507, 514 (2008)). However, "we have always reserved lenity for those situations in which a reasonable doubt persists about a statute's intended scope even *after* resort to the language and structure, legislative history, and motivating policies of the statute." *Moskal v. United States*, 498 U.S. 103, 108 (1990) (internal quotation marks omitted); *see Mendez v. Barr*, 960 F.3d 80, 87 (2d Cir. 2020). We do not hold such doubts here; the statutes and regulations provide a clear

19

definition of application: a passport application form and supporting documentation submitted to a U.S. passport official for review prior to signature and oath. Once Gu submitted her application form and supporting materials to Pacheco, she had made "an application for passport" and was criminally liable for knowing and willful false statements contained within that application made with the intent to secure a U.S. passport. *See* 18 U.S.C. § 1542.[4]

We conclude that application means exactly what the regulation defining it states. It is "the application form for a United States passport, as prescribed by the Department pursuant to 22 U.S.C. [§] 213 and all documents, photographs, and statements submitted with the form or thereafter in support of the application." 22 C.F.R. § 51.1. The regulation explicitly calls one document the application form, and then refers thereafter to "the application" as a submitted package of the form and supporting documentation. *Id*. The evidence here shows that Gu submitted a passport application form containing willfully false statements for review by a passport official. Thus, her sufficiency challenge fails on the merits.

---

[4] Having rejected Gu's challenge to her Section 1542 conviction on Count 2, we necessarily find that she committed the required predicate offense to affirm her conviction for § 1028A(a)(1) aggravated identity theft on Count 3.

## CONCLUSION

As set out above, the jury reasonably concluded that Gu submitted a passport application with numerous falsehoods and did so with the intent to obtain a passport. Accordingly, the judgment of the district court upholding Gu's convictions on Counts 2 and 3 is affirmed.

Further, Abel's counsel's *Anders* motion is granted. The government's motion for summary affirmance is also granted with respect to Abel's conviction, special conditions of supervised release, and special assessment as they present no nonfrivolous issues and we dismiss nostra sponte Abel's appeal of his term of imprisonment as this term has concluded.